### The Second Congregational Society in North Bridgewater *versus* Thomas J. Howard.

A deed conveying land to a corporation, which had been delivered to an agent of the corporation for safe keeping, was subsequently given up by him to the grantor, at the grantor's request, and on the ground, that he had objected to the deed at the time when it was executed. It was *held*, that *trespass* might be maintained by the corporation against the grantor, thus obtaining possession of the deed.

But *it seems*, that as the delivering up the deed did not divest the title of the corporation to the land, the damages recovered should be nominal, unless the corporation should release their interest in the land.

TRESPASS against the defendants for taking, carrying away, and converting to their own use, a title deed of certain land, which had been executed and delivered by them to the plaintiffs. The defendants pleaded severally *not guilty*. The trial was before *Wilde* J.

It appeared, that the land claimed by the plaintiffs was originally owned by Caleb Howard, by whom it was valued at the sum of fifty-seven dollars ; that before his decease he had proposed to convey it either to the plaintiffs, or to the proprietors of the meetinghouse where the plaintiffs attended public worship, for the sum of seven dollars ; making a donation of the residue of the sum at which it was valued ; that the land was devised to the defendants, who were the children of Caleb Howard ; and that it was their wish to convey it according to the intentions of their father.

At a meeting of the society on April 16, 1831, it was voted to direct the prudential committee, to make a settlement with the heirs of Caleb Howard, " with regard to the donation of a piece of land, made by him to the society, and draw an order on the treasurer in favor of said heirs for seven dollars, to pay the balance for said piece of land, which sum is over and above the amount that was intended to be given as a donation."

John Crafts, who was a member of the prudential commi_tee, testified, that, at the request of Perez Crocker, who had charge of the finances both of the society and of the proprietors of the meetinghouse, he consented to attend to the procuring a conveyance of the land, Crocker saying that he

would pay, or had paid, the seven dollars ; that on June 25, 1831, he carried the deed in question to the defendants and requested them to execute it ; that the defendants, at first, declined doing so, on the ground, that it conveyed the land to the society, instead of the proprietors of the meetinghouse ; but that on his urging them, they executed it ;–that the witness took the deed, and kept it, but that it was out of his hands once or twice, and that on one occasion, Newton Shaw received it from him for the purpose of enabling him to place a fence in pursuance of certain votes of the society, and did not return it for several months afterwards.

Second
Congr. Soc.
in North
Bridgewater
v.
Howard.

On July 18, 1831, a meeting of the society was held, in pursuance of a warrant which contained the following article ·  " To see if the society will choose a committee and vest them with authority to exchange a piece of their land, that they had of the heirs of Caleb Howard, deceased, for a piece of land that the centre school district now owns," &c. ; and it was voted at such meeting, that a committee then chosen should " be instructed to confer with the committee of the school district, and ascertain on what conditions an exchange of lots of land may be made, and report their doings, at the adjournment of this meeting."

Crafts further testified, that in the summer of 1832, Thomas J. Howard, one of the defendants, requested him to deliver up the deed in question, stating that he had objected to it at the time it was signed ; that the witness thought, that as the defendants had objected to the deed at the time when it was executed, there was a propriety in giving it up to them, and that, upon that ground, he did give it up ; and that about the same time he and the defendants left the society, but whether this was before or after the deed was given up, he could not say.

There was evidence, that Crafts on one occasion had the deed at a meeting of the society, and that it was read there by several persons.

On August 30, 1832, the defendants conveyed the land to Howard Tilden.  Subsequently the deed in question was demanded of Crafts, and also of the defendants, by a committee duly chosen by the society for the purpose ; but it was not delivered up.

Second Congr. Soc. in North Bridgewater
*v.*
Howard.

It was admitted on the argument, that the deed in question was read at the trial, and appeared to be in no part defaced or cancelled.

If the Court should be of opinion, that the action could be maintained, both or either of the defendants, was to be defaulted, as the Court should determine, and the damages were to be assessed at the sum of $70, the agreed value of the land ; otherwise the plaintiffs were to become nonsuit.

*Oct. 1st.*

*Warren* and *A. Prescott,* for the plaintiffs, to the point, that trespass was the proper form of action, and not trover, cited *Broughton* v. *Whallon,* 8 Wendell, 474 ; *Hurd* v. *West,* 7 Cowen, 752 ; *Nelson* v. *Merriam,* 4 Pick. 249.

*W. Baylies, Eddy,* and *Lothrop,* for the defendants, cited *The Six Carpenters' case,* 8 Coke, 290 ; *Allen* v. *Crofoot,* 5 Wendell, 500 ; *Imlay* v. *Sage,* 5 Connect. R. 489 ; *Freeman* v. *Blewitt,* 1 Salk. 409 ; *Phillips* v. *Bacon,* 9 East, 303 ; Bac. Abr. *Trespass, B ; Wilbraham* v. *Snow,* 2 Saund. 47.

*Plymouth, May term, 1835.*

SHAW C. J. delivered the opinion of the Court. This is an action of no great importance ; but the parties have put themselves upon their legal rights, depending upon somewhat strict points, and as such the Court have endeavoured to ascertain and declare them. It is an action of trespass, and depends very much upon that most difficult of all nice technical distinctions, that between case and trespass.

Two questions were discussed at the argument, first, whether the deed was ever so executed and delivered as to be the property of the plaintiffs ; and if so, secondly, whether, under the circumstances stated in the report, trespass will lie.

The first is mainly a question of fact, but as the evidence is detailed, and the question of its sufficiency referred to the Court, they have considered it. We are of opinion, that the evidence shows abundantly that this deed was duly executed.

[The Chief Justice proceeded to comment on the evidence of a delivery.]

Then the question recurs, supposing this deed duly executed and delivered upon good consideration, so as to become the property of the society, and obtained by the defendants in the manner stated, whether they are liable in trespass.

It is necessary to refer to these circumstances. It appears then, that the deed was executed and complete, and was left in the hands of Crafts merely for safe keeping. It was out of his hands, once or twice, once for several months, when it was handed to another agent of the society, Shaw, to enable him to determine how to set the fence ; indicating by this circumstance, the understanding of all parties, that the deed was executed, and the estate passed by it. Then the circumstances under which it was given up were these. Thomas J. Howard applied to Crafts for it, and stated that they had objected to signing it when it was given ; and Crafts thought, on that account, that there was a propriety in his giving it up, and on that ground he did give it up. It has not been attempted, in argument, to maintain the sufficiency of this reason, or to justify the conduct of Crafts. It is left somewhat doubtful on the report, whether Crafts had not, at that time, ceased to be a member of the society, and if the cause had turned on that fact, it might have been necessary to ascertain it more precisely ; but we think it does not. Under these circumstances, the Court are of opinion, that the authority of Crafts was merely that of a bailee for safe custody, that he had no authority, either to give up the deed, or to assent to the act of Thomas J. Howard in taking it, and therefore that the act of taking it from the custody of Crafts, stands on the same footing as if his consent had not been given. The possession of Crafts, without property, lien, or other claim of right, was the possession of the parish. It therefore amounts to this, taking away the property of the plaintiffs unlawfully, without justifiable cause, and without their consent, from their possession ; and this we think will support an action of trespass.

To maintain trespass it is not necessary to prove actual force in the taking ; force enough to do the act, and acquire the possession, against right, and without the consent of the owner, is sufficient. *Taking by force*, in the sense of the law, as applied to the action of trespass, is, taking without right or permission, in violation of the lawful possession of another. *Gibbs* v. *Chase*, 10 Mass. R. 128. Had the defendant taken the deed from the society's own depository,

*Second Congr. Soc. in North Bridgewater*
*v.*
*Howard.*

or from the table of their desk, there would have been no more actual force, and yet it cannot admit of a doubt, that trespass would lie. In one respect, indeed, not material to the present case, the assent of the keeper may be regarded as very material to the defendant, to rebut an imputation of a much more heinous nature, to which he might have been obnoxious, had the deed been obtained clandestinely, to de prive the defendants of the use and benefit of it.

The specific ground upon which this cause is decided, is this ; that the deed had become the property of the plaintiffs, and was in their lawful constructive possession, that Crafts was a mere depository, with no authority to surrender the deed to the grantors, or to consent to their taking it, for the purpose proposed, namely, to cancel it, that his assent thereto was wholly void, that the possession of the defendants, from the first moment of acquiring, was unlawful, that it was a violation of the plaintiffs' right of possession, and not a wrongful conversion after a rightful possession acquired, and therefore, that the action of trespass will lie. Suppose a deed intrusted to a servant, or a stranger, to carry to the register's office, and the grantor should ask for it, and the messenger, by mistake or otherwise, should deliver it, and the grantor should withhold it and deny the grantee's claim to have it restored, would the grantee's remedy be in any respect diminished, impaired, or affected by the assent of the messenger ? Suppose the same thing should occur in regard to a deed left with the register to record ; the register being the temporary keeper of the deed for a special purpose, if he should consent that the grantor should take away the deed, would such consent make the possession of the grantor, obtained without right, lawful, and compel the owner to make his demand, and resort to his action of trover ?

One consideration which presented itself to our minds was, whether Crafts might be deemed a tenant in common, claiming under this deed, and if so, whether, as one of the grantees, though he might be responsible to his cotenants, yet whether he had not such an authority coupled with an interest in the deed, as would with his consent give a lawful possession of the deed to the defendants. But the well known rule, in

regard to a corporation, as being a person in law, having rights distinct from those of all its members, settles this question. The deed was the property of the corporation, Crafts was not a cotenant, and had no property or interest, either in the land or the instrument conveying it, and therefore towards the corporation he stood upon the same footing as any other depositary, not a member of the society ; and this renders it ˙mmaterial whether he was a member of the society at the time, or not, other than as the fact may be supposed to have an influence upon his motives.

In regard to the defendant, Welcome Howard, there appears no sufficient evidence to charge him. The principle is no doubt true, that one may be chargeable in trespass by the act of another done for his benefit, if he assents to it ; but there is no evidence to bring this defendant within its operation.

The defendant, Thomas J. Howard, is to be defaulted.

As to the other defendant, Welcome Howard, the plaintiffs are to become nonsuit.

NOTE. It appears, that the damages were estimated at the value of the land. But as the getting up of the deed did not divest the plaintiffs' title, before entering judgment, the Court directed an inquiry whether the plaintiffs had released the land, and if not, whether they should not do so, or recover nominal damages only ; and at October term, 1835, by agreement of the parties, judgment was entered for nominal damages.